# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK C. SANCHEZ, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>)<br>)<br>Defendant. )<br>) | 1:06cv0956 LJO DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Frank C. Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.[1]

---

[1] Due to the recent appointment of Judge Lawrence J. O'Neill to the position of United States District Judge, this case was reassigned to the Honorable Dennis L. Beck.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for disability insurance benefits on August 30, 2004, and an application for supplemental security income on December 9, 2004. AR 60, 88-94, 222-230. He alleged disability since July 5, 2002, due to an ankle injury. AR 88-89. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 38-42, 45-50, 51, 231, 232. On April 18, 2006, ALJ James Berry held a hearing. AR 236-263. ALJ Berry denied benefits on April 26, 2006. AR 10-19. On June 14, 2006, the Appeals Council denied review. AR 5-8.

<u>Hearing Testimony</u>

ALJ Berry held a hearing on April 18, 2006, in Fresno, California. Plaintiff appeared with his attorney, Robert Ishikawa. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 236.

Plaintiff was 52 years old at the time of the hearing and completed 14 years of schooling. He worked at Sunrise Medical from 1987 until July 5, 2002, as a wheelchair assembler. AR 240. He stopped working because he broke his ankle while on vacation. AR 242.

Plaintiff testified that he could not put full weight on his ankle and had been in constant pain since the injury. He has also had constant swelling. AR 243. He is able to walk because he uses a cane. He thought he could walk about a block before needing to rest, and then another 10-15 minutes. He takes the recommended medication for the swelling and soaks his ankle in warm water and epsom salt in the evenings. He thought he could stand for five to ten minutes before being in pain. AR 244. He used crutches for about four to five months after the accident but followed a recommendation to switch to a cane. AR 245. He has to keep his foot elevated when he sits and spends about six to eight hours of his day with his foot elevated. Elevating his foot reduces the swelling and reduces the pain a little. AR 245. He thought he could sit for about six and a half hours with his leg elevated, and about 10-15 minutes without his leg elevated. AR 246. He has trouble concentrating and paying attention when he is in pain and thought that he

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

could focus on one thing for about 10-15 minutes.  He thought he could lift about five pounds.  AR 247.

His doctor has recommended reconstructive surgery, but he is unable to get it because he has no medical insurance.  He tries to see his doctor once a month, but is only able to go when his kids pay for it.  AR 247.

Plaintiff described the pain as very sharp.  He takes ibuprofen, Vicodin and sometimes codeine.  He stated that he suffers a lot with the pain because he does not want to get addicted to the pain medication.  AR 248.  He tries to help out around the house during the day, but falls constantly.  AR 248.  He goes shopping with his wife but holds onto the cart.  AR 248.  He estimated that he falls about eight to ten times a month.  AR 249.  He tries to vacuum and clean up outside.  He drives because he is the only driver in the family.  AR 250.  He tries to go to church every Sunday and tries to see his grandchildren.  AR 251.  He is able to pick things up off the floor, but it is very difficult.  His wife helps him dress and bathe.  AR 251.

The ALJ asked Plaintiff about Dr. Shanthram's belief in December 2002 that his ankle was healed.  Plaintiff responded that it was not healed and that when he saw Dr. Shanthram, "he would not even touch my ankle, he would just look at it" and tell him it would get better.  AR 253.  Dr. Shanthram released Plaintiff to light duty at that time, but his job did not have light duty.  AR 254.  The ALJ also asked Plaintiff about a notation in the medical record from February 2004 that Plaintiff was going to Bally's gym for physical training.  Plaintiff testified that he never had a membership but went with his brother a few times to see if it would help.  AR 255.

When asked about his physical capabilities by the ALJ, Plaintiff thought he could stand for five to ten minutes.  The medication helps with the pain for a little while, but then he starts moving around and the pain comes back.  The medication sometimes makes him relaxed and drowsy.  AR 257.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience.  This person could lift and carry 20 to 40 pounds occasionally, 20 pounds frequently, and stand, walk and sit for six hours.  This person could

occasionally use the right lower extremity to operate foot controls but could not climb ladders, scaffolds or ropes. The VE testified that this person could not perform Plaintiff's past work but could perform light work. As examples, the VE noted assembly work, hand packaging and machine tenders. AR 259-206.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry five to six pounds maximum, sit for six and a half hours, stand five to ten minutes and walk for one block. This person must elevate the right foot six to eight hours per day. This person could not perform any work. AR 261.

Plaintiff's attorney asked the VE to assume that this person could stand and walk for four to six hours, with no more than two hours of continuous standing or walking. He had to use hand rails when climbing stairs and could not work on ladders or scaffolding. He could not lift and carry more than 20 pounds frequently, 40 pounds occasionally. His right foot was limited to occasionally operating foot controls. The VE testified that this person could not perform Plaintiff's past work, but could perform some light work if the walking was close to the six hour range. If it were less than six hours, there would be some erosion in the light positions due to the need for a sit/stand option. There would also be some sedentary positions available. AR 261-262.

<u>Medical Evidence</u>

X-rays of Plaintiff's right ankle taken on July 6, 2002, did not reveal evidence of a fracture, dislocation or other abnormality. AR 128.

On August 12, 2002, Plaintiff began seeing Sanagaram S. Shantharam, M.D. His right ankle had minimal swelling on the lateral side. Range of motion and strength were good. He diagnosed a recovering ankle lateral ligament sprain and felt that Plaintiff would improve over time. He told Plaintiff to continue wearing the brace. AR 147.

An MRI on September 19, 2002, revealed a vertical fracture of the posterior tibia with minimal surrounding edema indicating a subacute fracture. There was also a torn interosseous ligament with some edema of the mid talus and subchondral cysts in the calcaneus. There was some edema around the sinus tarsus fat. Ligaments and tendons were intact. AR 144-145.

Plaintiff returned to Dr. Shantharam on September 30, 2002, and continued to complain of pain in his heel and foot.  He reviewed the recent MRI and ordered x-rays.  Since he still had pain and difficulty weight-bearing, Dr. Shantharam gave him a brace to protect his ankle.  He could weight-bear in the brace but was to remove it for range of motion purposes.  AR 143.

On October 28, 2002, Plaintiff's range of motion had improved significantly and the x-rays showed his fracture was healing very well.  Dr. Shantharam thought Plaintiff should remove the brace and start weight-bearing and range of motion as tolerated so that Plaintiff could "get back to his life."  Plaintiff was reluctant and continued to have symptoms in the lateral part of his ankle.  Dr. Shantharam thought that the swelling and pain may be related to scar tissue and would settle down over time, but if not, arthroscopic debridement could be considered.  AR 142.

On December 16, 2002, Plaintiff continued to complain of persistent pain on the lateral side.  There was minimal swelling but significant pain with range of motion.  X-rays and MRIs did not show any abnormalities and Dr. Shantharam opined that the posterior malleolar fracture appeared to have healed very well.  AR 140.  Dr. Shantharam thought Plaintiff had a recurrence of synovitis and gave him an ankle support, exercises and Vioxx.  Plaintiff insisted on having an arthroscopy performed, but Dr. Shantharam thought it would be of limited value and wanted to wait to see how he did with the Vioxx.  AR 140.

On January 6, 2003, Plaintiff indicated that he had not improved and that he was experiencing paresthesias and numbness in the lateral part of his ankle.  There was good range of motion and minimal tenderness in the lateral part, but no swelling.  Dr. Shantharam indicated that he was having difficulty making a diagnosis and that he had tried all treatment options.  He did not think arthroscopy was an option because there were no signs of synovitis.  He was given a prescription for an Aircast and told to do exercises.  AR 139.

Plaintiff reported on February 5, 2003, that he was doing very well but that he still had pain with minimal discomfort.  Range of motion was good and there was no swelling.  Dr. Shantharam agreed with Plaintiff's request to try nonsteroidals and muscle relaxants for another four weeks and then return to work.  AR 138.

On March 28, 2003, Plaintiff told Dr. Shantharam that he was feeling much better and wanted to return to work. Range of motion in his ankle was excellent and there was no swelling or tenderness. Dr. Shantharam released Plaintiff and indicated that he could return to work "in full capacity." AR 136.

Plaintiff saw Dr. Shantharam on January 13, 2004. Plaintiff "has done very well, but now [ ] says his ankle is hurting on the lateral side and he is using an Aircast." He had a fair amount of tenderness and mild swelling on the lateral ankle ligaments and range of motion was painful. Dr. Shantharam suspected that Plaintiff re-injured his ankle but would improve from physical therapy and nonsteroidal medications. AR 135.

On February 24, 2004, Plaintiff reported to Dr. Shantharam that he was having pain and swelling especially when working out. He was going to Bally's Gym "to get some physical training." On examination, there was no swelling and Plaintiff had good movement. There was some tenderness along the Achilles' tendon, but it appeared to be intact. Dr. Shantharam arranged for physical therapy and instructed Plaintiff to stop the ibuprofen and restart Naprosyn. AR 134.

On March 30, 3004, Plaintiff returned to Dr. Shantharam and continued to complain of pain with periodic swelling. He reported that the brace provided some relief and that he was getting physical therapy. On examination, he had good range of motion. Dr. Shantharam opined that he could not find a specific problem that would require surgical intervention. He believed that he had done everything he could, without surgery, and that he should see a foot and ankle specialist. AR 132.

In March and April 2004, Plaintiff went to seven out of eight physical therapy sessions. The discharge summary indicated that the treatment goals were not met. AR 150-169.

A July 23, 2004, MRI revealed that the fracture had healed. There was a small residual focus of abnormal signal intensity in the subchondral region of the distal tibia, which suggested some tiny cysts. The cystic lesion showed previously in the calcaneous shows interval decrease in size. The abnormal signal intensity noted previously in the sinus tarsal fat had resolved. There was a small amount of non-specific subcutaneous edema medially. AR 173.

On December 23, 2004, Plaintiff reported to Larry D. Scortt, D.P.M., with extreme pain. Dr. Scortt opined that Plaintiff "clearly" could not stand for more than just a few minutes and could not be expected to participate in any kind of walking activity. AR 196.

On January 5, 2005, Dr. Scortt wrote a letter indicating that Plaintiff received injections with little relief. He had extreme pain with palpation in the area of the ankle joint and subtalar joint, as well as extreme pain with range of motion and edema. He could not be expected to participate in any kind of walking activity of more than just a couple of minutes. Dr. Scortt diagnosed traumatic arthritis of the right ankle joint and right subtalar joint and opined that fusion of the joints would be the ultimate treatment. He did not think that Plaintiff could participate in any kind of work activity, "since mainly getting up from a chair and standing causes him extreme difficulty and pain." AR 184-185.

On January 15, 2005, Plaintiff saw Steve McIntire, M.D., for a consultive orthopedic evaluation. Plaintiff reported pain and occasional swelling, and stated that he did light housework at home. On examination, he was in no acute distress but had an antalgic gait on the right. He was reluctant to walk on his heels, toes or tandem, so these maneuvers were not tested. Romberg was negative. Plaintiff used a cane, although the exam did not suggest the need for a cane. There was full range of motion and no bony deformity detected in the ankle. There was tenderness to palpation over the right lateral malleolus and over the right subtalar region, extending up over the distal calf. Drawer sign of the ankle was negative. AR 186-189.

Dr. McIntire diagnosed probable osteoarthritis of the ankle and subtalar joint. He opined that Plaintiff would be limited to four to six hours of walking or standing in an eight hour day with no more than two hours of continuous walking or standing. He needed to use a hand rail when climbing stairs and could not work on ladders or scaffolding. He could lift and carry 40 pounds occasionally and 20 pounds frequently. Plaintiff had no limitations on sitting. He could operate foot controls occasionally with his right foot. AR 189.

On February 9, 2005, State Agency physician Durell Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could occasionally lift 40 pounds, 20 pounds frequently. He could stand and/or walk about six hours in

an eight hour day and could sit for about six hours in an eight hour day. He could occasionally use his right foot to operate foot controls. He could never climb ladders or scaffolds. AR 199. This opinion was affirmed by another State Agency physician. AR 197-203.

Plaintiff saw Dr. Scortt on February 14, 2005, and reported extreme pain and that he could not stand at all on his foot. Dr. Scortt reviewed Dr. McIntire's assessment and stated that he would send a "rebuttal since the patient cannot even walk across the floor in a room." Plaintiff told Dr. Scortt that Dr. McIntire did an incomplete examination. Examination of his foot showed "extreme excruciating pain with limited range of motion" and Plaintiff held "his foot in spasm because of extreme discomfort and pain to the area." He had minimal edema but was restricted totally with his motion. He was given a new prescription for Motrin and an injection of the right subtalar joint. AR 194.

On March 16, 2005, Dr. Scortt wrote a letter to DSS in which he opined that Plaintiff could not walk more than two to three minutes or stand on his feet at all. AR 193.

On March 18, 2005, Dr. Scortt indicated that Plaintiff was "extremely disabled, because he can barely walk for at least a couple of minutes." He was given a new ankle brace and samples of Celebrex. AR 218.

Plaintiff returned to Dr. Scortt on April 29, 2005, with continued pain. His Motrin and Vicodin were renewed. A TENS unit was applied to his ankle and foot. Plaintiff was in the process of getting Medi-Cal and if he did, Dr. Scortt would assist him in getting a TENS unit. AR 216.

On August 3, 2005, Plaintiff complained of severe excruciating pain. There was pain on palpation and with range of motion. Plaintiff reported that he had fallen a couple of times and Dr. Scortt indicated that he was now having problems with his "back being out of position from splinting his leg and foot." He was advised to use his walker more and continue to use the cane. AR 214.

Plaintiff returned to Dr. Scortt on October 19, 2005. Plaintiff had changed his walking so that his knee and hip were now being affected. There was extreme pain with palpation and pain with range of motion. No pulses were palpable and there was some edema. He received another

injection and Dr. Scortt indicated that Plaintiff "clearly needs to obtain coverage so that he can have surgical intervention and possible fusion of the area." AR 213.

On April 6, 2006, Dr. Scortt wrote a letter to Plaintiff's counsel in which he disagreed with Dr. McIntire's findings, calling him "totally oblivious to the situation involving Mr. Frank Sanchez." He considered the examination "false" and set forth his own limitations. He also opined that Plaintiff would continue to deteriorate unless he obtained coverage for surgery. AR 220-221.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of status post fracture of the right lower extremity and arthritis. After reviewing the medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 40 pounds occasionally and 20 pounds frequently, and stand, walk and sit for six hours in an eight hour work day. He could occasionally use his right lower extremity to operate foot controls, but could never climb ladders, ropes or scaffolds. AR 15. Based on this RFC, Plaintiff could not perform his past relevant work but could perform other jobs in the national economy. AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

9

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (status post fracture of the right lower extremity and arthritis) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; and (5) retains the RFC to perform a significant number of jobs in the national economy. AR 15-19.

Plaintiff contends that the ALJ (1) improperly assessed the physicians' opinions; and (2) improperly evaluated his testimony.

**DISCUSSION**

A.   Physicians' Opinions

Plaintiff argues that the ALJ improperly evaluated the physicians' opinions. Specifically, he argues that the ALJ improperly adopted the opinions of the State Agency physicians over the opinion of the consultive examiner, and improperly rejected the opinion of Plaintiff's treating physician.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, the Ninth Circuit has

upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).

In formulating Plaintiff's RFC, the ALJ adopted the opinion of Dr. Sharbaugh, the nonexamining State Agency physician. Dr. Sharbaugh opined that Plaintiff could occasionally lift 40 pounds, 20 pounds frequently, stand and/or walk about six hours in an eight hour day, sit for about six hours in an eight hour day, occasionally use his right foot to operate foot controls, and never climb ladders or scaffolds. AR 199. The ALJ further stated that he gave "great weight" to the opinions of consultive examiner McIntire and Plaintiff's treating orthopedic surgeon Dr. Shantharam. AR 17.

Plaintiff correctly notes that the ALJ did not specifically explain why he adopted Dr. Sharbaugh's opinion over Dr. McIntire's. The two opinions were very similar, although Dr. McIntire imposed a slightly more limited ability to stand and/or walk, opining that Plaintiff was limited to four to six hours of walking or standing in an eight hour day, with no more than two hours of continuous walking or standing. AR 17.

Insofar as Plaintiff faults the ALJ for not explaining his decision to adopt Dr. Sharbaugh's opinion, his argument misstates the ALJ's analysis. While the ALJ's RFC was based on Dr. Sharbaugh's opinion, the RFC finding was largely consistent with Dr. McIntire's opinion. Therefore, the ALJ did not completely reject Dr. McIntire's opinion, but only the portion setting forth the lower range of standing/walking time and the two hour limit on continuous standing/walking.

The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753-754. Here, the ALJ relied on the State Agency physician's opinion in formulating the RFC. That opinion was consistent with Dr. Sharbaugh's opinion, as explained above. The opinion was also supported by Dr. Shantharam, Plaintiff's treating orthopedist, who released Plaintiff to return to work "in full capacity" in March 2003. AR 136. A year later, in March 2004, Dr. Shantharam reported that he could not

find a specific problem and that he had done everything he could for Plaintiff. AR 132. The findings of a nontreating, nonexamining physician can amount to substantial evidence where, as here, the other evidence in the record supports those findings. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The Court also notes that even if the ALJ used Dr. McIntire's limitations as the basis for Plaintiff's RFC, the VE testified that a person with such limitations would be able to perform some light and sedentary positions. AR 261-262.

Plaintiff further argues that the ALJ improperly rejected the opinion of Dr. Scortt. He contends that Dr. Scortt's opinion was based on MRI results and repeated clinical findings of limited range of motion, edema, antalgic gait and the need for bracing.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In his analysis of the medical evidence, the ALJ set forth Dr. Scortt's clinical findings as well as his opinion that Plaintiff was totally disabled. AR 17. In rejecting this finding, ALJ Berry stated:

> However, the claimant's current treating podiatrist Dr. Scortt asserted in three Exhibits 6F, 8F, and 11F that he is limited to less than sedentary functioning due to severe pain and lack of motion in the right ankle. However, the doctor offers no objective medical evidence to support this conclusion except passingly mentioning the July 23, 2004 MRI

13

>of the claimant's ankle which showed a healed fracture and some small cysts (Exhibit 4F). I do not give Dr. Scortt's opinion any weight because of a lack of supporting evidence.

AR 17.

Indeed, Dr. Scortt's opinion was contradicted by a majority of the medical evidence, including Dr. Shantharam's opinion that Plaintiff was able to return to full time work. Furthermore, as the ALJ explained, Dr. Scortt's extreme opinion was not supported by objective medical evidence. Although he cites the 2004 MRI that "showed evidence of old fractures," a reference to an improved MRI does not support the extreme limitations. AR 193. In fact, the MRI showed that the fracture was "completely healed," a previous cystic lesion had decreased in size, and the previously noted increased signal intensity in the sinus tarsal fat had resolved. AR 172-173. The only abnormalities were some tiny cysts and a small amount of non-specific subcutaneous edema medially. AR 173. The ALJ was reasonable in concluding that this MRI, when viewed in light of the other evidence of record, was not a significant objective finding to support Dr. Scortt's opinion.

The remaining evidence cited by Plaintiff in support of Dr. Scortt's opinion is mainly based on his subjective complaints. Plaintiff cites limited range of motion testing, his alleged extreme pain, antalgic gait and the need for bracing. These, however, are mainly based on Plaintiff's subjective complaints and do not necessarily provide support for Dr. Scortt's opinion. An ALJ may also reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).

The Court recognizes the Ninth Circuit's recent decision in *Orn v. Astrue,* ___F.3d ___ (9th Cir. 2007)(2007 WL 2034287), in which the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. However, under the facts of this case, where Dr. Scortt's extreme opinion and criticism of other providers were not supported by the record, *Orn* does not compel a different result.

1  The ALJ's treatment of the physicians' opinions was supported by substantial evidence and free of legal error.

B. <u>Plaintiff's Credibility</u>

Finally, Plaintiff contends that the ALJ gave insufficient reasons for rejecting his pain allegations. He argues that the ALJ's "conclusory statements" do not provide enough information to support the ALJ's finding and do not specify which statements the ALJ found credible and which he did not.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In evaluating Plaintiff's credibility, the ALJ determined that although Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible. AR 16. In reviewing the medical records, the ALJ explained that Plaintiff felt much better in March 2003 and wanted to return to work. He was released to return to work, but

15

did not return and did not go back to the doctor for nine months. He stated, "despite the claimant's complaints of allegedly disabling symptoms, he did not see his treating physician for nine months." AR 16, 17. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility).[3]

In 2004, Dr. Shantharam believed that Plaintiff would improve with conservative treatment, i.e., physical therapy and nonsteroidal medication. AR 16, 17, 135. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (explaining that conservative treatment suggested lower level of pain than asserted). Dr. Shantharam eventually referred Plaintiff to a foot and ankle specialist because he could not find a specific problem. AR 16. During this time, Plaintiff went to Bally's gym a few times to see if it would help. AR 17, 135, 255. The ALJ may use "ordinary techniques" in addressing credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Consistent with the above, the ALJ explained that based on Dr. Shantharam's and Dr. McIntire's findings, he found that Plaintiff's "self-assigned very limited physical functioning" was not justified by the objective evidence. AR 17. Although a lack of objective evidence cannot be the sole basis for rejecting a claimant's allegations, it is one factor that the ALJ may examine. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's credibility assessment was specific enough to allow the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's allegations.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Frank Sanchez.

---

[3] There is no evidence that Plaintiff was unable to afford treatment during this time frame.

1  These findings and recommendations will be submitted to the Honorable Lawrence J.
2  O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after
3  being served with these findings and recommendations, the parties may file written objections
4  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
5  and Recommendations."  The parties are advised that failure to file objections within the
6  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
7  F.2d 1153 (9th Cir. 1991).

9  IT IS SO ORDERED.
10  Dated:   **August 14, 2007**                    **/s/ Dennis L. Beck**
                                                                UNITED STATES MAGISTRATE JUDGE